```
NEW YORK DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARY ANNE HARDING,

                        Plaintiff,                    **MEMORANDUM DECISION
                                                         AND ORDER**
            -against-
                                                       05 Civ. 4445 (GAY)
NEWBURGH ENLARGED CITY SCHOOL
DISTRICT,

                        Defendant.
------------------------------------------------------------X
```

Plaintiff Mary Anne Harding commenced this action against her employer, the Newburgh Enlarged City School District ("District"), alleging employment discrimination on the basis of disability pursuant to the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* and New York state law.[1] Plaintiff also alleges that the District retaliated against her in violation of her rights under the ADA. Presently before this Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").[2] For the reasons set forth below, defendant's motion is granted and plaintiff's complaint is dismissed.

---

[1] Plaintiff also asserted disability discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Defendant contends that said claim is not cognizable under Title VII. Plaintiff does not address this argument in her motion papers; in fact, plaintiff's Memorandum of Law summarizes the claims presented and does not mention any claim under Title VII. Accordingly, plaintiff's Title VII claim is dismissed.

[2] This action is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. §636(c).

## I. BACKGROUND

The following facts–taken in the light most favorable to plaintiff–are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions. Any disputes of material fact are noted.

Plaintiff Mary Anne Harding commenced her employment with defendant, the Newburgh Enlarged City School District ("District"), in September 1999 and is currently employed by the District as a full-time teacher. From 1999 until 2002, plaintiff was a full-time reading and writing specialist at Heritage Junior High School. While working at Heritage in December 2000, plaintiff was assaulted by a student and suffered injury. Plaintiff returned to work following the December 2000 incident at the same job position and hours that she had worked prior to the incident. In December 2001, plaintiff was again injured when she attempted to break up a fight between two students. In January 2002, plaintiff returned to work at her previous full-time position. As a result of the two incidents, plaintiff suffered injuries to her back, left hip and left knee. Plaintiff received Workers Compensation benefits for medical care related to her injuries. Following the December 2001 incident, plaintiff did not tell any District personnel that she had any physical problems or impairments which precluded her from carrying out her job duties.

At the end of the 2001-02 school year, all reading specialists at Heritage had their positions terminated from the school. As a result, plaintiff was transferred to the Temple Hill Academy. Plaintiff began working at Temple Hill in September 2002, and worked on a full-time basis during the entire 2002-03 school year. The plaintiff used

stairs during the 2002-03 school year, albeit infrequently; during the 2002-03 school year, plaintiff did not advise school personnel that she needed any sort of special accommodation for any physical problems. Also during that year, due to a shortage of classroom space, plaintiff shared a room at Temple Hill with another teacher. Plaintiff found that sharing a room made teaching difficult.

When plaintiff began the 2003-04 school year at Temple Hill, she did not advise anyone from the District that she was either disabled or needed any sort of accommodation for any type of impairment. In the middle of September 2003, in response to plaintiff's dissatisfaction concerning the room-sharing, she was assigned another room. The room to which plaintiff was assigned was formerly a faculty lounge area, which was in the process of being cleaned and overhauled for use by the plaintiff as a classroom space. Upon first inspection of the room, plaintiff observed that the room was dirty and had a bad odor. Plaintiff spoke with a custodian, who agreed to clean the room. When plaintiff began to move her things into the room, she noticed that an attempt had been made to clean it, but plaintiff began to feel sick. During her first week of teaching in the new room, plaintiff missed one day from school as a result of an asthmatic reaction to the new room.

As a result of plaintiff's alleged breathing problems, and the new room's limited space, Temple Hill's principal (Edward Mucci) offered plaintiff alternate locations within which plaintiff could teach, including the primary library and the cafeteria. Although plaintiff was not aware of any other teachers who ever taught in the cafeteria, defendant asserts that, due to the shortage of classroom space at Temple Hill, other teachers commonly taught in the libraries, cafeteria and other non-traditional classroom settings.

Principal Mucci also offered plaintiff a room on the third floor and a space adjacent to a band room. Plaintiff declined these spaces on the basis of her opinion that the areas were dirty and not ventilated. At the end of September 2003, plaintiff ceased working at Temple Hill due to respiratory distress. Plaintiff thereafter received Workers Compensation Benefits for a work-related injury involving asthma and lung irritation.

By letter dated September 29, 2003, plaintiff's physician (Dr. Gulati) stated that "when" plaintiff was able to work, she would need to be located in a classroom "that is free from mold, dust, odors, fumes and other irritants that she is allergic to and exacerbate her asthma." The letter imposed no restrictions on plaintiff's use at work of stairs or inclines. Dr. Gulati thereafter submitted letters to the District which indicated plaintiff's continued inability to work for the remainder of 2003 due to a diagnosis of asthma and related complications.

Plaintiff received clearance to return to work as of January 5, 2004 and accordingly met with Principal Mucci to discuss teaching arrangements at Temple Hill. Plaintiff was initially offered the room she had previously been assigned, as it had since been cleaned. Plaintiff declined; Mucci offered plaintiff the opportunity to teach in a landing above the main library. Plaintiff declined this location because it required her to climb up and down a steep flight of stairs. Plaintiff thereafter submitted another note from Dr. Gulati (dated January 13, 2004) which stated that plaintiff was "unable to work in an area that must be accessed via an incline or stairs." On or about January 28, 2004, plaintiff filed an EEOC complaint against the District.

In March 2004, one of plaintiff's Union representatives advised her that there was an available teaching position at Gardnertown. Plaintiff commenced employment at

Gardnertown in March 2004 as a reading teacher. Plaintiff presently holds the same position. From 2004 to present, plaintiff has received annual salary increases and has suffered no loss or reduction in benefits. From March 2004 until the time of plaintiff's deposition on August 25, 2006, plaintiff had not received any negative reports about her work at Gardnertown. Plaintiff testified at her deposition that she had never complained to anyone about any of her job conditions at Gardnertown and that she was satisfied with her job. Plaintiff also had no recollection of ever telling anyone at Gardnertown that she had filed either an EEOC complaint or a civil action against the District at any time.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. See LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP 56(e). Where a plaintiff fails to establish an essential element of her claim, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Caution should be exercised in addressing summary judgment motions in discrimination cases where intent and state of mind are at issue because "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (citations omitted). Nonetheless, the Second Circuit has expressly "remind[ed the] district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." See Weinstock v.Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quotation and citation omitted). On the one hand, mere conclusory allegations of discrimination will not defeat a summary judgment motion; a plaintiff in a discrimination case must proffer "concrete particulars" to substantiate his claim. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). On the other hand, courts must be aware of the fact that "discrimination will seldom manifest itself overtly." Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999). Courts must therefore "carefully distinguish between evidence that allows for a reasonable

6

inference of discrimination and evidence that gives rise to mere speculation and conjecture." Id.  Thus, the ultimate question in deciding a summary judgment motion in a discrimination case "is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances." Id.

### III. SUMMARY JUDGMENT ANALYSIS:  ADA AND REHABILITATION ACT

Courts in this circuit analyze employment discrimination claims brought under the ADA and the Rehabilitation Act pursuant to the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998); Gentile v. Potter, 509 F. Supp.2d 221, 231-32 (E.D.N.Y. 2007).  Under the McDonnell-Douglas framework, plaintiff "must initially come forward with facts sufficient to establish a prima facie case that [the employment decision] was effected under circumstances giving rise to an inference of discrimination."  Greenway, 143 F.3d at 52.  Plaintiff's burden of establishing a prima facie case is "minimal."  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If the plaintiff establishes his prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised and the burden of production then shifts to the employer "to articulate some legitimate nondiscriminatory reason" for its actions.  See Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc).  "The employer's explanation must be clear and specific, so that the employee has an opportunity to demonstrate pretext."  Hill v. Taconic Dev. Disabilities Serv. Office, 181 F. Supp.2d 303, 317 (S.D.N.Y. 2002).

7

"Should the defendant carry this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. See St. Mary's Honor Ctr., 509 U.S. at 507-08. In determining whether the plaintiff has met this burden, the court must take a "case-by-case" approach that weighs "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.'" James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-49 (2000)). In other words, although the burden of production shifts, "the ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited discrimination occurred." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quotation and citation omitted).

**IV. FAILURE TO ACCOMMODATE: ADA AND REHABILITATION ACT**

Plaintiff alleges that the District failed to provide her with a reasonable accommodation in violation of the ADA and the Rehabilitation Act. Specifically, plaintiff contends that the District failed to provide her a teaching area that would not exacerbate her asthma and would not require her to climb stairs numerous times each day.

In order to recover on her failure to accommodate claim under the ADA, plaintiff must demonstrate that: (1) she is an individual with a disability within the meaning of the ADA; (2) the District is covered by the ADA and had notice of her disability; (3) she could perform the essential functions of the position with reasonable accommodations; and (4) the District refused to provide such accommodations. See Riddle v. Liz

Claiborne, Inc., No. 00 Civ. 1374, 2006 WL 3057289, at *6 (S.D.N.Y. Oct. 27, 2006). The Rehabilitation Act's statutory language overlaps that of the ADA, and common terms are to be interpreted in the same way. See Stone v. City of Mount Vernon, 118 F.3d 92, 96 (2d Cir. 1997). Here, the District argues, *inter alia*, that plaintiff has failed to show that she is an individual with a disability within the meaning of the ADA and the Rehabilitation Act and, therefore, has not demonstrated a prima facie case of failure to accommodate.

In order to establish the first prong of her prima facie case, plaintiff must demonstrate either (1) that she has a physical impairment that substantially limits one or more of her major life activities, (B) a record of such impairment or (C) that the District regarded her as having such impairment. See 42 U.S.C. § 12102(2); 29 U.S.C. § 794(d). Here, plaintiff contends that she is an individual with a qualifying disability because the District regarded her as being substantially limited in the major life activity of working. In support of her contentions, plaintiff argues that the deposition testimony of her supervisors establishes that (1) defendant acknowledged that plaintiff's physicians' notes stated that plaintiff needed accommodations, *i.e.*, prohibiting exposure to mold and toxins and an accessible classroom and (2) defendants relied on said notes as proof of plaintiff's physical condition. "However, [m]ere knowledge by an employer of an employee's impairment, . . ., is not enough to prove the employer regarded the employee as disabled. An employee must also show that the employer perceived such an impairment as substantially limiting the major life activity of working." Smith v. State Univ. of New York, No. 1:00-CV 1454, 2003 WL 1937208, at *9 (N.D.N.Y. Apr. 23, 2003) (internal citations omitted). An individual is substantially limited in the ability to

work only if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs." See 29 C.F.R. § 1630.2(j)(3)(i). Here, even assuming that plaintiff has proffered evidence which establishes that the District regarded her as unable to perform her job as a reading specialist because of her disability, she has presented no evidence from which a rational jury could conclude that defendant regarded her as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs. Plaintiff, therefore, fails to establish that she is disabled within the meaning of either the ADA or the Rehabilitation Act. Accordingly, defendant's summary judgment motion is granted with respect to plaintiff's ADA and Rehabilitation Act claims for failure to accommodate.

## V. RETALIATION

Plaintiff also alleges that the District retaliated against her in violation of her rights under the ADA because she filed the EEOC complaint on January 28, 2004, and/or commenced the instant action on May 6, 2005 and/or filed the instant Amended Complaint on January 10, 2007. Plaintiff specifically contends that, while she was at Gardnertown, the following incidents and actions constituted acts of retaliation: (1) a meeting at some point in 2004 convened to address an allegation os discrimination made against plaintiff by another faculty member; (2) being asked to substitute more than other teachers during the 2005-06 school year; (3) Principal Wilson's allegedly inappropriate conduct during a parent-teacher conference in November 2005; (4) Principal Wilson's alteration of a misconduct charge against a student during the 2005-06 school year; (5) plaintiff's removal from the Instructional Support Team in September

2006; (6) Principal Wilson's alleged mishandling of the plaintiff's report of a child abuse incident in September 2006; (7) the plaintiff's assignment to late bus duty in September or October 2006; (8) Principal Wilson's convening of a grade level meeting with plaintiff in November 2006; (9) the denial of plaintiff's request to transfer to another school in November 2006; and (10) Principal Wilson's handling of issues relating to handicapped parking spaces in January 2007.

Plaintiff's retaliation claim is also subject to the *McDonnell Douglas* burden-shifting analysis. See Gentile, 509 F. Supp.2d at 232. To establish a prima facie case of retaliation under the ADA, plaintiff must demonstrate that (1) she engaged in protected activity; (2) defendant was aware of this activity; (3) defendant took adverse action against her; and (4) a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. See Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 177 (2d Cir.2006). As to the fourth prong, proof of a causal connection may be shown either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. Of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

As to the first prong of plaintiff's prima facie case, the Court's conclusion that plaintiff is not disabled within the meaning of the ADA does not necessarily affect her retaliation claim, provided that plaintiff demonstrates that she engaged in the protected activity with a good faith belief that the District violated the law. See Weissman v. Dawn

Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000). For purposes of this motion, the Court assumes that plaintiff possessed the requisite good faith belief and was, therefore, engaged in activity protected by the ADA.

The alleged retaliatory acts enumerated in grounds one through eight occurred prior to December 2006. However, the undisputed evidence establishes that Gardnertown's Principal Wilson had no knowledge prior to December 2006 that plaintiff had brought disability discrimination claims against the District. Further, plaintiff testified at her deposition that she has no recollection of ever telling anyone at Gardnertown that she had filed either an EEOC complaint or a civil action against the District at any time. "The lack of knowledge on the part of particular individual agents is admissible as some evidence of a lack of a causal connection." Gordon, 232 F.3d at 117 (emphasis omitted). Although a jury may choose to disbelieve witnesses who deny that events essential to a plaintiff's case occurred, the plaintiff cannot prevail on this disbelief alone. See Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 109 (2d Cir. 1997). In other words, retaliation can be found where the agent denies knowledge of a plaintiff's protected activity, "so long as the jury finds that the *circumstances* evidence knowledge of the protected activities." Gordon, 232 F.3d at 117 (emphasis added). Here, however, based upon a review of the record, no rational jury could draw said necessary inference based upon the totality of the circumstances. In sum, plaintiff proffers no evidence from which a rational jury could conclude that the perpetrator of the alleged retaliatory acts enumerated in grounds one through eight was aware of plaintiff's protected activity. Accordingly, grounds one through eight may not serve as the basis for plaintiff's retaliation claim.

As her ninth ground for her retaliation claim, plaintiff alleges that the District denied her request to transfer to another school in November 2006. In the first instance, although temporal proximity may demonstrate a causal nexus, the longer the interval between the protected activity and the adverse employment action, the more attenuated the evidence of the requisite causation. See Spadola v. New York City Transit Auth., 242 F. Supp.2d 284, 294 (S.D.N.Y. 2003). In other words, the causal connection cannot be established where the adverse action is too remote in time from the alleged protected activity. See Gross v. National Broadcasting Co., Inc., 232 F, Supp.2d 58, 74 (S.D.N.Y. 2002). Here, the eighteen month interval between the denial of plaintiff's request for a transfer in November 2006 and the filing of the instant action in May 2005 is insufficient evidence of a causal connection.

Plaintiff also argues, however, that the District imposed additional application requirements for plaintiff that did not apply to other candidates. Plaintiff specifically alleges that, in November 2006, she applied for two District positions; plaintiff admits that both applications were untimely. One of the positions–at the Horizons-on-Hudson Magnet School–was reposted in January 2007. Plaintiff admittedly did not respond to the reposting. Plaintiff nonetheless argues that the District refused to consider her for the reposted position on the ground that she did not reapply, despite the fact (plaintiff contends), that the person who was ultimately hired for the position also did not reapply. Contrary to plaintiff's assertion, defendant establishes (through the affidavit of Lisa Buon, Principal of the Horizons-on-Hudson school) that the person who was ultimately hired for the position plaintiff sought did, in fact, apply to the reposting. Plaintiff proffers no evidence to refute defendant's contention. In sum, plaintiff fails to proffer any

13

evidence from which a rational jury could conclude that a retaliatory motive played a part in the District's denial of plaintiff's request to transfer.

The sole remaining ground for plaintiff's retaliation claim–Principal Wilson's handling of issues relating to handicapped parking spaces–occurred in January 2007. Plaintiff had previously complained that individuals without handicapped tags were parking in designated handicapped spaces. According to defendant, It was Gardnertown's practice that handicapped parking spaces were freely available to anyone who felt the need to use them, on a "first-come, first-served" basis. In January 2007, the parking lot was reconfigured; the District's Human Resource Director thereafter instructed Principal Wilson that anyone who wished to use a handicapped parking spot needed to submit a doctor's note authorizing same. The gist of plaintiff's argument is that Wilson required her to produce a doctor's note prior to utilizing the handicapped parking area even though Wilson knew plaintiff possessed a New York State handicapped tag, and that Wilson imposed said requirement in retaliation for her complaints of discrimination.

For purposes of demonstrating a retaliation claim, the adverse employment action at issue must be "materially adverse" in that it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." See Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2415 (2006).[3] Petty slights and minor annoyances do not satisfy this standard. See id. See also Delgado v. Triborough

---

[3] Although White involved claims under Title VII, the standard applies here "[b]ecause the retaliation provisions of the ADA and Title VII contain similar language and have been interpreted uniformly." See Gomez v. Laidlaw Transit, Inc., 455 F. Supp.2d 81, 89 (D. Conn. 2006).

14

Bridge and Tunnel Auth., 485 F. Supp.2d 453, 461 (S.D.N.Y. 2007)("not every unpleasant matter short of discharge or demotion constitutes an adverse action"). Here, plaintiff has not demonstrated that Wilson's requirement that she provide a doctor's note constituted anything more than a minor annoyance; thus, Wilson's requirement was not materially adverse. In any event, plaintiff offers no evidence to refute defendant's proffer that other employees who wished to utilize the handicapped spots were also asked to produce a doctor's note. In sum, plaintiff has failed to proffer evidence from which a reasonable jury could conclude that Wilson's requirement was motivated by retaliatory animus. Accordingly, defendant's summary judgment motion is granted with respect to plaintiff's retaliation claim.

## VI. NEW YORK STATE CLAIM

The only remaining claim is plaintiff's discrimination claim pursuant to New York State Human Rights Law. Having dismissed the underlying federal claims, the Court declines to exercise jurisdiction over the pendent State law claim. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1996) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Accordingly, the remaining state law claim is dismissed.

## VII. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is

15

claims should be dismissed as well."). Accordingly, the remaining state law claim is dismissed.

## VII. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is **GRANTED**, plaintiff's cross-motion for summary judgment is **DENIED** and plaintiff's claims are dismissed.

The Clerk of the Court shall enter judgment accordingly.

Dated: March _____, 2008
White Plains, New York

**SO ORDERED:**

_____
GEORGE A. YANTHIS, U.S.M.J.